UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR LUIS M.R.,[1]<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | No. 1:26-cv-04296-TLN-AC<br>A# 213-224-170<br>**ORDER** |

This matter is before the Court on *pro se* Petitioner Edgar Luis M.R.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition") (ECF No. 1). Petitioner later filed a Motion for Temporary Restraining Order ("TRO").[2] (ECF No. 16) Respondents filed an omnibus response to the motion for TRO and habeas petition. (ECF No. 18.) For the reasons set forth below, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and orders Respondents to immediately release Petitioner.

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] In light of Petitioner's motion for TRO and in the interests of judicial economy, the Court hereby revokes the prior referral to the assigned magistrate judge and retains this matter pursuant to Local Rule 302(d).

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States without inspection on or about July 16, 2019, near the Paso Del Norte Bridge in Texas. (ECF No. 18-1 at 2.) He was issued a Notice to Appear pending the outcome of his removal proceedings. (*Id.*) On December 3, 2019, an immigration judge ordered Petitioner removed *in absentia*. (*Id.*)

Petitioner entered the United States without inspection on or about March 7, 2021, and immigration authorities detained him. (ECF No. 18-2 at 2–3.) On June 16, 2022, he was released into the United States on an I-220B order of supervision, which is issued to noncitizens who have a final order of removal but cannot be immediately removed.[3] (ECF No. 16 at 5, 37–39.) After his release, Petitioner states he complied with his reporting requirements, obtained work authorization, and maintained steady employment. (*Id.* at 5.) Petitioner submits letters of reference from his family, friends, and employer. (*Id.* at 8, 12–15.) Petitioner filed a motion to reopen his immigration case, and an immigration judge denied the motion in November 2023. (ECF No. 18-6 at 1–3.) Petitioner has a pending asylum application. (ECF No. 18-1 at 2.)

On March 31, 2026, approximately six years after the issuance of his final order of removal, immigration officers detained Petitioner following his arrest on a misdemeanor domestic battery charge. (*Id.*) Petitioner has now been detained for over three months. (*Id.*) He challenges his detention as violating his due process rights and seeks immediate release. (ECF No. 1 at 6.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[3] Contrary to Respondents' assertion that Petitioner was never released under an order of supervision and that immigration officers encountered him only after his 2026 arrest when they detained him to execute his 2019 removal order (ECF No. 18 at 5), the Form I-213s submitted by Respondents (ECF No. 18-1 at 2, ECF No. 18-2 at 2) and the order of supervision submitted by Petitioner (ECF No. 16 at 37–39) both show that immigration officers previously released Petitioner subject to supervision.

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner argues that his detention without any process violates his due process rights.[4] (ECF No. 1 at 6–7.) In opposition, Respondents claim Petitioner has a final removal order and his detention is authorized under 8 U.S.C. § 1231(a)(6).[5] (ECF No. 18 at 3.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

[4] The petition, liberally construed, asserts violations of Petitioner's substantive and procedural due process rights under the Fifth Amendment. (ECF No. 1 at 6–7.) Because this Court finds relief warranted under Petitioner's procedural due process claim, the Court declines to assess Petitioner's remaining claims in favor of judicial economy.

[5] Respondents also argue that, to the extent Petitioner seeks to relitigate or collaterally challenge his 2019 *in absentia* removal order or the denial of his 2023 motion to reopen his removal proceedings, this Court lacks jurisdiction to review either decision through habeas corpus and Petitioner has failed to exhaust his administrative remedies. (ECF No. 18 at 4.) Petitioner, however, challenges neither decision. He contends that his continued detention violates his due process rights. (ECF No. 1 at 6–7.) Respondents' jurisdictional argument therefore does not apply, and the Court need not address prudential exhaustion.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released in 2022 on an order of supervision, following a final order of removal. (ECF No. 16 at 5, 37–39.) Petitioner maintains, and Respondents do not contest, that he complied with the terms of his release. (ECF No. 16 at 5; *see generally* ECF No. 18.) Indeed, Respondents claim Petitioner was detained due to his final order of removal, not for violating the conditions of his release. (ECF No. 18 at 5.) Over the four years Petitioner spent on conditional release, he developed "enduring attachments of normal life" as described in *Morrissey*, 408 U.S. at 482. Petitioner obtained work authorization, maintained steady employment, and developed strong ties to his community. (ECF No. 16 at 5, 8, 12–15.) For these reasons, the Court finds Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

Because Petitioner is subject to an order of supervision (ECF No. 16 at 37–38),

Petitioner's detention is governed by § 1231(a)(3) rather than § 1231(a)(6). *See Diallo*, 2025 WL 3718477, at *2 (citing *Zadvydas*, 533 U.S. at 683); *see also Diaz v. Wofford*, No. 1:25-CV-01079-JLT-EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)[(6)]," but is instead subject to supervision under § 1231(a)(3)). Respondents cannot rely on 8 U.S.C. § 1231(a)(6), without any procedural safeguards, as the authority for Petitioner's re-detention after they released him an order of supervision and have been supervising him since 2022. (ECF No. 16 at 38.) Section 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time [ICE] sees fit[.]" *Diallo*, 2025 WL 3718477, at *2. When a noncitizen is subject to supervision under § 1231(a)(3), the government must follow certain procedures to revoke that supervision to take them into custody. *See* 8 C.F.R. §§ 241.4, 241.13.

Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Petitioner was released from immigration custody four years ago, has work authorization, maintained steady employment, and developed strong ties to his community. Despite this, Petitioner has now been detained for over three months without prior notice or an opportunity to respond to the reasons for revocation of his release. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems

to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process as to his detention, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *Diaz*, 2025 WL 2581575, at *4. These regulations allow ICE to re-detain a noncitizen under certain circumstances, for example, a violation of conditions of release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Neither process was followed here. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). Indeed, Respondents do not claim that they properly notified Petitioner of the revocation of his release and gave him an opportunity to respond. Respondents appear to disregard Petitioner's order of supervision entirely and failed to disclose it to this Court.[6] As Petitioner was denied procedural safeguards to ensure his re-detention was justified, there is a serious risk of his liberty being erroneously deprived.

Finally, the government's interest in detaining Petitioner without procedural safeguards is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Respondents have put forth no compelling

---

[6] Respondents represented that Petitioner had never been released under an order of supervision, but the record establishes otherwise. The Court will not tolerate such a material representation and directs Respondents to present the relevant factual record fully and accurately in all future pleadings.

interest to support arresting and re-detaining Petitioner without notice or a hearing. Notice and custody determination hearings are routine processes for Respondents, they are the very procedures required by regulation to revoke an order of supervision, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Petitioner was entitled to notice and a hearing to determine whether re-detention was warranted. Respondents did not provide either. Thus, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Edgar Luis M.R. (A# 213-224-170) from custody under the same conditions as his 2022 order of supervision. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. At the time of release, Respondents must return all of Petitioner's documents and possessions.

2. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

3. Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections and 8 C.F.R. §§ 241.4, 241.13, including a minimum of seven-days' notice of the intent to revoke release and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

4. Petitioner's Motion for TRO (ECF No. 16) and Motion to Appoint Counsel (ECF No. 19) are DENIED as moot.

**5. The Clerk of Court is directed to serve Central Valley Annex with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 24, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE